UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DASHAWN BROWN,                                      :

                   Petitioner,             :              05 Civ. 10434 (RCC) (AJP)

             -against-                 :              **REPORT AND RECOMMENDATION**

WILLIAM B. BROWN,                                   :

                  Respondent.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Richard C. Casey, United States District Judge:**

        Pro se petitioner Dashawn Brown seeks a writ of habeas corpus from his May 10,

2001 conviction, after a jury trial in Supreme Court, New York County, of first and third degree

criminal possession of a controlled substance, for which Brown is serving a sentence of 12 years

imprisonment.[1/]  (Pet. ¶¶ 1-5.)  Brown's habeas corpus petition asserts that:  (1) the police lacked

probable cause to arrest Brown "solely upon the basis of his having received a brown paper bag in

exchange for U.S. currency" without police observing  "the contents of the brown paper bag" nor

"any furtive or evasive behavior" (Pet. ¶ 13(2)); (2) Brown received ineffective assistance of trial

---

[1/]     Brown was originally sentenced to concurrent prison terms of fifteen years to life for First
Degree Criminal Possession of a Controlled Substance and one to three years for Third
Degree Criminal Possession of a Controlled Substance.  However, Brown's sentence for the
first-degree count was subsequently modified to under New York's Drug Law Reform Act
["D.L.R.A."] to a determinate 12 years.  (Dkt. No. 4:  Amended Petition ["Pet."] ¶ 4.)

counsel at the suppression hearing because "counsel conceded that he was not familiar with the law as it pertained to this case" and failed to "undertake necessary legal research, to investigate and to submit a memorandum on the case law" (Pet. ¶ 13(1)); (3) Brown received ineffective assistance of trial counsel because counsel did not call as a witness Willie Press, Brown's co-arrestee, "who made favorable statements in confirmity [sic] with petitioner's position and offered to testify on petitioner's behalf" (Pet. ¶ 13(3)); and (4) Brown received ineffective assistance of trial counsel because of "counsel's failure to permit [Brown] to testify on [his] own behalf" (Pet. ¶ 13(3)).

        For the reasons set forth below, Brown's habeas petition should be <u>DENIED</u>.

<u>FACTS</u>

        Brown's conviction arose from his August 4, 2000 purchase of four and one-half ounces of cocaine from Pablito Diaz on 139th Street near Broadway, in Manhattan. (<u>E.g.</u>, Dkt. No. 14: 3/22/01 Trial Transcript ["Trial Tr."] 16-17.)

**The Pretrial Suppression Hearing**

        On March 19-20, 2001, Justice Bruce Allen held a pre-trial <u>Mapp</u> hearing as to Brown and a <u>Wade</u> hearing as to then-co-defendant Diaz. (Dkt. No. 13: 3/19/01 <u>Mapp</u> Tr. & 3/20/01 <u>Mapp</u> Tr.) Detectives Edward Maier, Beth Robinson, and Tyrone Viruet of the Northern Manhattan Initiative[2] testified during the two-day hearing. (Maier: 3/19/01 <u>Mapp</u> Tr. 6-64; Robinson: 3/19/01 <u>Mapp</u> Tr. 65-96; Viruet: 3/20/01 <u>Mapp</u> Tr. 3-66.)

---

[2]    The Northern Manhattan Initiative is a narcotics unit that covers the geographical area from West 135th Street north to the tip of Manhattan between Amsterdam Avenue and Riverside Drive. (Maier: 3/19/01 <u>Mapp</u> Tr. 6-7.)

Detective Maier, a ten year veteran of the New York City Police Department, testified regarding his substantial experience in narcotics investigations. (3/19/01 <u>Mapp</u> Tr. 6-9.) Detective Maier participated in more than 1,000 narcotics related law enforcement activities of which more than 500 involved arrests and more than 300 were in the area of 139th Street and Broadway, including 100 arrests. (3/19/01 <u>Mapp</u> Tr. 7-8.) Detective Maier characterized the area as a "narcotics prone location." (3/19/01 <u>Mapp</u> Tr. 9.) Detective Maier testified that various types of narcotics packaging were typical to the area, such as tinfoil wrappers, clear plastic bags, and clear plastic bags inserted into brown paper bags. (3/19/01 <u>Mapp</u> Tr. 8-9.) On August 4, 2000 at approximately 10 p.m., Detective Maier was in the vicinity of West 139th Street and Broadway as part of the field team supporting undercover Detective Viruet. (3/19/01 <u>Mapp</u> Tr. 9-10, 25, 29, 32.) Detective Maier received radio transmissions from Detective Viruet regarding his observation of the narcotics transaction between Brown and Diaz, <u>i.e.</u>, the exchange of a package for money. (3/19/01 <u>Mapp</u> Tr. 11-15, 27, 32, 35-45, 59, 62-63.) However, Detective Maier did not personally witness the drug transaction. (3/19/01 <u>Mapp</u> Tr. 32-35, 37, 42.) Detective Maier and other officers stopped the car in which Brown was riding, and recovered a brown paper bag containing cocaine. (3/19/01 <u>Mapp</u> Tr. 16-21, 49-52, 58-59.)

Detective Robinson, a fifteen year veteran of the Police Department, participated in several hundred narcotics law enforcement activities. (3/19/01 <u>Mapp</u> Tr. 65-67, 88.) Detective Robinson was part of the field team supporting Detective Viruet on August 4, 2000. (3/19/01 <u>Mapp</u> Tr. 67, 94.) Detective Robinson heard some of Detective Viruet's radio transmissions regarding the narcotics transaction between Brown and Diaz (3/19/01 <u>Mapp</u> Tr. 74, 75, 77-78), but did not witness

the transaction personally (3/19/01 <u>Mapp</u> Tr. 76, 77, 96).  She recovered a brown paper bag containing a plastic bag containing crack cocaine from the car in which Brown was arrested. (3/19/01 <u>Mapp</u> Tr. 67-71, 84-88, 93.)

Over the prosecution's objection, Brown's counsel called the undercover officer to testify at the hearing.  (3/19/01 <u>Mapp</u> Tr. 96-98; 3/20/01 <u>Mapp</u> Tr. 2-3.)  Detective Viruet had over three years experience as an undercover officer and was very familiar with that geographical area. (3/20/01 <u>Mapp</u> Tr. 5-6.)  Detective Viruet had performed buys and observations[3] at the specific location in front of 600 West 139th Street numerous times.  (3/20/01 <u>Mapp</u> Tr. 12, 22-24, 29-30, 32, 51, 56-57, 60.)  On prior occasions, Detective Viruet observed narcotics packaged in brown paper bags at that location.  (3/20/01 <u>Mapp</u> Tr. 29, 53-54, 61-64.)

Shortly after 10:00 p.m. on August 4, 2000, Detective Viruet observed Brown and two other individuals (later identified as Willie Press and Margaret Sanchez) approach and talk to Diaz.  (3/20/01 <u>Mapp</u> Tr. 12-13, 33-36, 38, 49.)  Diaz walked away and returned five to ten minutes later.  (3/20/01 <u>Mapp</u> Tr. 13-15, 31, 38-40, 43-44, 49-50.)  Detective Viruet had a profile view of both Brown and Diaz (3/20/01 <u>Mapp</u> Tr. 36-37), and the area was well lit by lights on the stores (3/20/01 <u>Mapp</u> Tr. 41-42).  From approximately fifteen feet away, Detective Viruet observed Diaz hand Brown a "brown paper object" and saw Brown hand money to Diaz.  (3/20/01 <u>Mapp</u> Tr. 15-17, 20-22, 44, 54-55, 58, 61.)  Detective Viruet testified that, when he saw Diaz hand Brown a brown

---

[3]      An "observation" is a police operation where an undercover officer watches for a person buying drugs from another person, then radios the description of the buyer and seller to a field team.  The field team attempts to apprehend the buyer first and then the seller, in order to obtain the evidence.  (Dkt. No 14: Maier: Trial Tr. 187-88; <u>see</u> 3/20/01 <u>Mapp</u> Tr. 7-8.)

paper package in exchange for money, he believed he had observed a drug transaction.  (3/20/01 Mapp Tr.  44, 48, 54.)  Detective Viruet radioed the field team that a package had been exchanged. (3/20/01 Mapp Tr. 19, 22, 44, 56, 57, 60.)  He repeated descriptions of the individuals and their direction of travel.  (3/20/01 Mapp Tr. 17-19, 22, 24-25, 44-45.)  Detective Viruet followed Brown and the other two individuals until other members of the field team radioed that they had them in sight.  (3/20/01 Mapp Tr. 17, 45-46, 58.)

        After testimony completed, defense counsel for Brown, defense counsel for Diaz, and the Assistant District Attorney ("A.D.A.") argued whether Detective Viruet's observations provided probable cause to arrest Brown and to search the car.  (3/20/01 Mapp Tr. 67-78.)  Brown's defense counsel requested the opportunity to perform case law research on the probable cause issue related to the specific facts, i.e., the "brown paper bag" issue (3/20/01 Mapp Tr. 67-68), and Justice Allen invited submission of "cases" before he rendered a written decision (3/20/01 Mapp Tr. 68, 79). However, stating that the probable cause questions could be resolved without postponing the case, Justice Allen orally denied the suppression motion in all respects and immediately proceeded to trial. (3/20/01 Mapp Tr. 68, 78-79).

        Justice Allen also ruled that should Brown take the stand, the prosecution would be permitted to ask Brown if he had been convicted of two misdemeanors and two felonies.  (3/20/01 Mapp Tr. 80.)

        Finally, based partially on arguments by both defense counsel (3/20/01 Mapp Tr. 90-92, 95-96; see also Dkt. No. 13:  3/20/01 Voir Dire Tr. 3-20), Justice Allen granted a motion to sever the trials of Brown and Diaz (3/20/01 Mapp Tr. 105; Voir Dire Tr. 20).

**Justice Allen's Written Suppression Decision**

On April 12, 2001, after the trial, Justice Allen issued a written decision on Brown's suppression motion, finding that Detective Viruet had probable cause to believe he had witnessed a drug sale when he observed the transaction between Brown and Diaz.  (Dkt. No. 12:  Ex. S:[4] 4/12/01 Justice Allen Suppression Decision.)  Justice Allen concluded:

> At a location that Detective Viruet knew from experience to be drug-prone, he observed defendant Diaz hand defendant Brown an object - round and wrapped in brown paper - in exchange for a wad of money.  The object was of a size, shape, and packaging which Viruet knew to be typical for cocaine sales in that area.  This observation was sufficient to give Viruet probable cause to believe that Diaz had sold narcotics to Brown.

(Id. at 5-6, citations omitted.)  Justice Allen denied the motion to suppress.  (Id. at 7.)

**The Trial**

**The Prosecution Case at Trial**

The prosecution's evidence at trial essentially repeated the testimony from the pretrial suppression hearing.

On August 4, 2000, Detective Viruet was assigned to conduct undercover observations of potential drug activity.  (Viruet:  Trial Tr. 35-36, 38-39, 116, 121.)[5]  Detective

---

[4]     References to lettered exhibits are to the exhibits to the August 17, 2006 affidavit of Assistant Attorney General Alyson J. Gill (Dkt. No. 12).

[5]     Detective Viruet worked as an undercover officer in the Northern Manhattan Initiative narcotics unit for three years.  (Dkt. No. 14: Viruet:  Trial Tr. 31.)  As an undercover, Detective Viruet participated in well over 200 narcotics enforcement operations purchasing drugs or conducting observations.  (Viruet:  Trial Tr. 33-34.)  Prior to working as an undercover, Detective Viruet received specialized training on drug packaging, sale values, and terminology, as well as how to identify and describe people.  (Viruet:  Trial Tr. 32-33.)

Robinson, Detective Maier, and Sergeant Vargas were members of Detective Viruet's supporting field team that evening. (E.g., Viruet: Trial Tr. 38, 106.) At approximately 10:00 p.m., Detective Viruet was standing on the corner of 139th Street and Broadway in Manhattan. (Viruet: Trial Tr. 39-41, 88, 125-26, 139.) Detective Viruet saw Diaz standing in front of a grocery store at 600 West 139th Street. (Viruet: Trial Tr. 43-44, 128-30.) The area was well lit by lights inside and outside the stores. (Viruet: Trial Tr. 57-58, 77-79, 130-31, 133, 137-38, 170.) Detective Viruet observed Brown and two other individuals (Willie Press and Margaret Sanchez) approach Diaz. (Viruet: Trial Tr. 45-48, 51, 126, 128, 130, 134-35.) Brown and Diaz spoke briefly. (Viruet: Trial Tr. 46, 58, 78, 134.) A few minutes later, Diaz left the others and walked east toward Broadway, directly past Detective Viruet. (Viruet: Trial Tr. 59, 135-36.)

Approximately five to ten minutes later, Diaz returned and approached Brown. (Viruet: Trial Tr. 62-63, 141, 144-45, 148, 150, 152, 154, 158.) Detective Viruet was about fifteen feet away. (Viruet: Trial Tr. 64-65, 152, 153, 155.) Brown and Diaz had a brief conversation. (Viruet: Trial Tr. 63, 154, 157, 159.) Detective Viruet saw Diaz hand Brown a package and Brown hand Diaz money. (Viruet: Trial Tr. 63-64, 79, 156-57, 159-60, 178-79, 183.) The package was round and wrapped in brown paper. (Viruet: Trial Tr. 63, 112-14, 156, 160, 180, 199.)

Detective Viruet radioed the field team that Diaz had given Brown a "package" and described Brown and the others. (Viruet: Trial Tr. 65, 66, 162-66.) Brown and the other two people walked away from Diaz, west on 139th Street, with Detective Viruet following until the backup team radioed that they had the suspects in sight. (Viruet: Trial Tr. 65-67, 79-81, 162, 166, 175-76; Maier: Trial Tr. 193-95, 210-11, 259.)

Brown and the two others got into a car, and Sergeant Vargas directed the field team to approach. (Maier: Trial Tr. 196-97, 262, 266-67; Robinson: Trial Tr. 330, 333-34.) Detectives blocked the car and ordered the occupants out of the car. (Maier: Trial Tr. 197-98, 267-70; Robinson: Trial Tr. 300-03, 334-38, 361.)

Detective Robinson observed a round package, wrapped in brown paper, on the rear floor of the car. (Maier: Trial Tr. 199, 270-72; Robinson: Trial Tr. 304, 306, 322, 339, 340, 357-58, 360.) A white substance within a clear plastic bag was partially visible under the brown paper. (Maier: Trial Tr. 272; Robinson: Trial Tr. 306-07, 314-15, 339, 357-60.) Detective Robinson removed the package from the car. (Maier: Trial Tr. 199, 271-72; Robinson: Trial Tr. 307, 318-19.) The package contained four and one-half ounces of cocaine. (Shah: Trial Tr. 371-72, 374, 385). Brown and the car's other two occupants were arrested. (Maier: Trial Tr. 274.) All three were from Trenton, New Jersey. (Robinson: Trial Tr. 309-10.)

**The Defense Case at Trial**

At the close of the prosecution's case, Brown's counsel moved to dismiss. (Dkt. No. 14: Trial Tr. 392.) The trial judge denied the motion, holding that the prosecution "presented a legally sufficient case for the jury to consider as to both counts." (Trial Tr. 393.) The defense rested without calling any witnesses. (Trial Tr. 402.)

**Verdict and Sentence**

The jury found Brown guilty of one count each of first and third degree criminal possession of a controlled substance. (Dkt. No. 14: Trial Tr. 484-87.)

On May 10, 2001, Justice Allen sentenced Brown to fifteen years to life imprisonment for the first-degree possession count and a concurrent term of one to three years for the third-degree possession count.[6/] (Dkt. No. 14: 5/10/01 Sentencing Tr. 4.)

**<u>Brown's Direct Appeal</u>**

Represented by new counsel, Brown's appeal to the First Department claimed, <u>inter alia</u>, that: (1) the <u>Mapp</u> hearing court erroneously denied the motion to suppress because the police had no probable cause to arrest Brown (Ex. A: Brown 1st Dep't Br. at 11-18); (2) Brown was denied effective assistance of counsel at the suppression hearing because counsel failed to undertake necessary and appropriate legal research (<u>id</u>. at 19-27); and (3) the trial judge failed to properly balance the appropriate factors when resolving Brown's <u>Sandoval</u> application (<u>id</u>. at 35-41).

Brown submitted a pro se supplemental brief further arguing that police did not have probable cause to arrest him based solely on the exchange of a paper bag for money, unaccompanied by any additional relevant behavior that a crime was being committed. (Ex. B: Brown 1st Dep't Pro Se Supp. Br. at 8-19.)

Brown also submitted a pro se addendum claiming that: (1) trial counsel was ineffective at the suppression hearing because counsel failed to evidence a significant knowledge of pertinent law and failed to submit a brief when given the opportunity; (2) counsel failed to present witnesses who were co-defendants and who made statements favorable to Brown's position; and

_____

[6/]   Brown's sentence for the first-degree count was subsequently modified to under the D.L.R.A to a determinate 12 years, which he is currently serving. (Dkt. No. 4: Pet. ¶ 4.)

(3) counsel failed to "permit" Brown to testify, despite frequent requests.  (Ex. C: Brown 1st Dep't

Pro Se Add. Br. at 3-4.)

> On April 1, 2003, the First Department affirmed Brown's conviction, holding:

> Defendant's suppression motion was properly denied.  An officer observed defendant, in a drug-prone neighborhood, converse with the codefendant, and then saw the codefendant leave the area only to return a few minutes later with a package, which he handed to defendant in exchange for a wad of cash.  Based on the officer's experience with the packaging of drugs in the area, he reasonably believed it likely that the package contained narcotics and therefore had probable cause to arrest defendant.  The arrest of defendant by a fellow officer, based upon communication received from the observing officer, was therefore lawful.

> Defendant was not denied the effective assistance of counsel at the suppression hearing.  Since there is no reason to believe that the suppression motion possessed any likelihood of success, counsel's failure to perform additional research or to submit a memorandum of law did not render the representation afforded defendant on the motion ineffective.

> . . . .

> The court's *Sandoval* ruling, permitting the prosecution to inquire about defendant's two felony convictions and two misdemeanor convictions without eliciting the nature and underlying facts of the convictions and precluding inquiry of defendant's use of an alias, balanced the appropriate factors and was a proper exercise of discretion.

People v. Brown, 304 A.D.2d 321, 321-22, 758 N.Y.S.2d 24, 25 (1st Dep't 2003) (citations omitted).

> On May 28, 2003, the New York Court of Appeals denied leave to appeal.  People

v. Brown, 100 N.Y.2d 536, 763 N.Y.S.2d 1 (2003).

## Brown's C.P.L. § 440 Motion

> On April 22, 2004, Brown filed a pro se C.P.L. § 440 motion, alleging ineffective

assistance of counsel.  (Ex. J: Brown § 440 Mot.)  Brown claimed that his trial counsel:  (1) failed

to make proper legal arguments at the suppression hearing and failed to submit a brief on the case law when given the opportunity (Brown § 440 Mot. ¶ 3A, Argument ["Arg."] A, Arg. C); (2) failed to call a witness at trial, Willie Press, who was interviewed, made statements favorable to Brown's position, and offered to testify on Brown's behalf (Brown § 440 Mot. ¶ 3B, Arg. B, & Press Aff. ¶ 3); and (3) refused to permit Brown to testify on his own behalf at the suppression hearing and trial (Brown § 440 Mot. ¶ 3B, Arg. B, & Annie Brown Aff. ¶ 3).

Brown's § 440 motion included an affidavit from Press, Brown's co-arrestee, stating that Press was interviewed by Brown's trial counsel, David Segal, before the hearing and Press told Segal he was available and willing to testify that "Margaret Sanchez was the true owner of the drugs" and "what was purchased on the street as observed by the Detective was a bottle of Remy Martin Cognac that Dashawn Brown asked [Diaz] to purchase from a liquor store less than a block away." (Brown § 440 Mot., Press Aff. ¶ 3.)

Brown's § 440 motion also included an affidavit from Annie Brown, Brown's mother, stating that on several occasions she heard her son ask Segal to put him on the witness stand, but Segal's reply was: "'no, I'm not going to allow it, they'll never believe you.'" (Brown § 440 Mot., Annie Brown Aff. ¶ 3.)

Trial counsel Segal submitted an affidavit in response to Brown's § 440 motion, stating that they had "numerous conferences" at which they discussed "trial strategy." (Ex. K: A.D.A. Miller § 440 Response Aff. Ex. 1: David Segal Aff.) Segal discussed with Brown whether Brown should testify:

Prior to and at the suppression hearing and during the trial I had numerous conferences with the defendant.  At each conference we discussed the facts of the case and trial strategy.  One of the matters the defendant and I discussed was whether or not he should testify.

I told the defendant that I thought it was better if he did not take the stand. I told him: that his story would not be believed and that his appearance, background and the Sandoval ruling would hurt him at trial.  In the end the defendant followed my advice and didn't take the stand.

Further, I never discussed this case with Willie Press either in Court or in my office.

(Segal Aff.)

On November 1, 2004, Justice Allen issued a written order dismissing Brown's first claim, ineffective assistance of counsel at the suppression hearing, on procedural grounds.  (Ex. L: Justice Allen § 440 Order at 2.)[7/]  Justice Allen also dismissed Brown's second claim, that counsel was ineffective for failing to call Press to testify, on the grounds that whether to call Press was a strategic decision.  (Id. at 2.)[8/]  However, since Justice Allen found that the affidavits raised a factual

_____

[7/]     Justice Allen held:

In denying defendant's direct appeal, the Appellate Division addressed defendant's contention that defense counsel failed to advance proper arguments on the suppression issue. The court noted that "Since there is no reason to believe that the suppression motion possessed any likelihood of success, counsel's failure to perform additional research or to submit a memorandum of law did not render the representation afforded on the motion ineffective."  As the People note, under CPL § 440.10(2)(a), defendant is procedurally barred from raising the same ground again.

(Id.)

[8/]     Specifically, Justice Allen's order stated:

(continued...)

issue on the third claim, he scheduled a hearing to determine "whether counsel dissuaded, rather than foreclosed, the defendant from testifying."  (Id. at 3; see also Dkt. No. 15: 4/15/05 § 440 Hearing ["H."] Tr. at 6.)

At the April 15, 2005 C.P.L. § 440 motion hearing, Annie Brown (§ 440 H. Tr. 8-31), Brown (§ 440 H. Tr. 32-58), and counsel Segal (§ 440 H. Tr. 59-67) testified.

Annie Brown testified that she was present on several occasions when Brown and Segal discussed Brown's case.  (§ 440 H. Tr. 8-11, 17, 27.)  Annie Brown heard Brown tell Segal on numerous occasions that he wanted to testify.  (§ 440 H. Tr. 10, 11, 14, 17-19, 27-28, 30-31.)  However, Segal responded that he was "'not going to allow'" Brown to take the stand (§ 440 H. Tr. 10, 11, 14, 18-21, 24, 30-31) because the jury would not believe his testimony (§ 440 H. Tr. 10, 21, 24).  Annie Brown did not remember if Segal discussed Brown's convictions as a reason why Brown should not testify.  (§ 440 H. Tr. 15-17.)  However, she did recall that Segal discussed Brown's

---

8/        (...continued)

Defendant does not make any showing that defense counsel was ineffective in failing to call Press to testify at the suppression hearing.  The proffered testimony [by Press] has no bearing on the legality of the police conduct leading to the recovery of the cocaine, which was the only relevant issue of the hearing.

To succeed on a claim of ineffective assistance of counsel, a defendant must demonstrate the absence of strategic or other legitimate explanations for counsel's conduct.  Defendant's own papers reveal the strategic reason counsel would not call Press as a witness:  counsel did not believe that the jury would find Press's testimony credible.

(Id., citations omitted.)

appearance, specifically wearing his hair in dreadlocks, as a factor.  (§ 440 H. Tr. 16, 22-26, 29-30.)
Annie Brown's impression was that "Segal was in control."  (§ 440 H. Tr. 19.)

According to Brown's own testimony, he told Segal at the suppression hearing that
he wanted to testify.  (§ 440 H. Tr. 33-34, 55.)  Segal responded by telling Brown that it would be
better if he did not testify, and to trust him.  (§ 440 H. Tr. 35-36.)  Brown reiterated to Segal during
trial that he wanted to testify.  (§ 440 H. Tr. 36-40.)  Segal responded that he was not going to put
Brown on the stand.  (§ 440 H. Tr. 38, 41, 47, 53-55, 57, 58).  Brown testified that Segal specifically
said that he would not "allow" Brown to take the stand.  (§ 440 H. Tr. 55-58.)  Segal never told
Brown that he had a right to testify.  (§ 440 H. Tr. 38-42, 55, 57.)[9]  Segal did tell Brown that the jury
would not believe Brown's testimony (§ 440 H. Tr. 37, 50, 54), and that Brown's appearance,
specifically his dreadlocks, was a factor (§ 440 H. Tr. 37, 41, 49-50, 52, 55).  Segal also told Brown
that his felonies in New Jersey were a factor against his credibility.  (§ 440 H. Tr. 41, 49-50, 55.)

In contrast, Segal, a practicing criminal defense attorney since 1969 (§ 440 H. Tr. 61),
testified that:  Brown and Segal had five to seven conversations about trial strategy (§ 440 H. Tr. 62,
66), Brown said he wanted to take the witness stand (§ 440 H. Tr. 63), and Segal advised that it was
not a good idea (§ 440 H. Tr. 62, 63, 64, 66-67).  Segal told Brown that the Sandoval ruling
(allowing his prior convictions if he testified) would hurt him (§ 440 H. Tr. 62, 67),  his hair was an
issue (§ 440 H. Tr. 62-63, 67), and his story was not credible to a jury (§ 440 H. Tr. 63, 67).  Segal

---

[9]    On two prior occasions when Brown had pled guilty, the judge advised him that at a trial, he
had the right to testify in his own behalf.  (§ 440 H. Tr. 42-47.)

testified that he specifically informed Brown that he had a right to testify and that the decision was Brown's. (§ 440 H. Tr. 65-66.) Segal denied that he ever said he would not "allow" Brown to testify. (§ 440 H. Tr. 65, 67.) "When it came down to it, [Brown] followed [Segal's] advice and didn't take the stand." (§ 440 H. Tr. 63-64.)

On April 29, 2005, Justice Allen denied Brown's § 440 motion in a written decision. (Ex. M:  4/29/05 § 440 Decision at 2.)  Justice Allen found that Segal "is an experienced and effective trial attorney who is presumably well aware of a defendant's absolute right to testify." (Id.) Justice Allen found credible Segal's testimony that he had informed Brown that Brown had the ultimate decision on whether to take the stand. (Id.)  Justice Allen noted that Brown's motion papers said his request to testify was denied by Segal without explanation, while at the hearing Brown admitted that "Segal had explained the reasons why [Segal] thought [Brown] should not take the stand – that because of his appearance and his criminal record, which would come out if [Brown] testified, the jury would not believe him." (Id.)  Justice Allen concluded:

> While I do not doubt that Mr. Segal may have used some of the conclusory language testified to by defendant and his mother, given that the defendant had been informed that the ultimate decision was his, such language would represent only a forceful attempt at persuasion, rather than a denial of the defendant's rights.

(Id.)

Brown sought leave to appeal Justice Allen's § 440 decision to the First Department (Ex. N:  Brown 1st Dep't § 440 Appeal), which on August 4, 2005 denied Brown's leave application without opinion (Ex. P:  1st Dep't § 440 Appeal Decision).  People v. Brown, No. M-2574, 2005 N.Y. App. Div. LEXIS 8368 (1st Dep't Aug. 4, 2005).

**Brown's Federal Habeas Corpus Petition**

Brown's pro se amended habeas corpus petition asserts that:  (1) the police lacked probable cause to arrest Brown "solely upon the basis of his having received a brown paper bag in exchange for U.S. currency" without police observing  "the contents of the brown paper bag" nor "any furtive or evasive behavior" (Dkt. No. 4: Pet. ¶ 13(2)); (2) Brown received ineffective assistance of counsel at the suppression hearing because "counsel conceded that he was not familiar with the law as it pertained to this case" and failed to "undertake necessary legal research, to investigate and to submit a memorandum on the case law" (Pet. ¶ 13(1)); (3) Brown received ineffective assistance of counsel because counsel did not call as a witness Willie Press, Brown's co-arrestee, "who made favorable statements in confirmity [sic] with petitioner's position and offered to testify on petitioner's behalf" (Pet.¶ 13(3)); and (4) Brown received ineffective assistance of counsel because of "counsel's failure to permit [Brown] to testify on [his] own behalf" (Pet. ¶ 13(3)).

**ANALYSIS**

**I.    THE AEDPA REVIEW STANDARD**[10/]

---

[10/]    For additional decisions by this Judge discussing the AEDPA review standard in language substantially similar to that in this entire section of this Report & Recommendation, see, e.g., Simms v. Moscicki, 06 Civ. 2056, 2006 WL 2466811 at *5-8 (S.D.N.Y. Aug. 25, 2006) (Peck, M.J.); McLean v. Conway, 06 Civ. 0807, 2006 WL 2405067 at *13-16 (S.D.N.Y. Aug. 21, 2006) (Peck, M.J.); Llanos v. Goord, 06 Civ. 0261, 2006 WL 1981749 at *11-14 (S.D.N.Y. July 14, 2006) (Peck, M.J.); A.S.Goldmen, Inc. v. Phillips, 05 Civ. 4385 & 05 Civ. 5496, 2006 WL 1881146 at *28-31 (S.D.N.Y. July 6, 2006) (Peck, M.J.); Rosario v. Walsh, 05 Civ. 2684, 2006 WL 1431410 at *12-15 (S.D.N.Y. May 25, 2006) (Peck, M.J., report & rec. adopted, 2006 WL 1880958 (S.D.N.Y. July 5, 2006); Hardison v. Artus, 06 Civ. 0322, 2006 WL 1330064 at *6-8 (S.D.N.Y. May 16, 2006) (Peck, M.J.) (report & rec.
(continued...)

Before the Court can determine whether Brown is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners." Williams v. Taylor, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000). The AEDPA imposed a more stringent review standard, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

---

10/      (...continued)
adopted, 2006 WL 1763678 (S.D.N.Y. June 23, 2006); Harris v. Woods, 05 Civ. 5582, 2006 WL 1140888 at *13-16 (S.D.N.Y. May 1, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 1975990 (S.D.N.Y. July 10, 2006); Nelson v. Sears, 05 Civ. 10341, 2006 WL 775123 at *5-8 (S.D.N.Y. Mar. 28, 2006) (Peck, M.J.); Hopkins v. Burge, 05 Civ. 8230, 2006 WL 519782 at *7-10 (S.D.N.Y. Mar. 3, 2006) (Peck, M.J.); Bryant v. Fischer, 05 Civ. 0437, 2005 WL 3418282 at *10-14 (S.D.N.Y. Dec. 14, 2005) (Peck, M.J.); Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *5-8 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.) (citing my earlier decisions), report & rec. adopted, 2006 WL 1636742 (S.D.N.Y. June 12, 2006) & 2006 WL 2689889 (S.D.N.Y. Sept. 19, 2006); Boyd v. Smith, 03 Civ. 5401, 2004 WL 2915243 at *5-7 (S.D.N.Y. Dec. 17, 2004) (Peck, M.J.) (citing my earlier decisions); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *12-14 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing my earlier decisions); Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *14 (S.D.N.Y. May 31, 2002) (Peck, M.J.), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), aff'd, 368 F.3d 179 (2d Cir. 2004); Mendez v. Artuz, 98 Civ. 2652, 2000 WL 722613 at *22 (S.D.N.Y. June 6, 2000) (Peck, M.J.), report & rec. adopted, 2000 WL 1154320 (S.D.N.Y. Aug. 14, 2000), aff'd, 303 F.3d 411, 417 (2d Cir. 2002), cert. denied, 537 U.S. 1245, 123 S. Ct. 1353 (2003); Fluellen v. Walker, 97 Civ. 3189, 2000 WL 684275 at *10 (S.D.N.Y. May 25, 2000) (Peck, M.J.), aff'd, 41 Fed. Appx. 497 (2d Cir. 2002), cert. denied, 538 U.S. 978, 123 S. Ct. 1787 (2003).

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[11/]

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." Williams v. Taylor, 529 U.S. at 404-05, 120 S. Ct. at 1519.[12/]  Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." Williams v. Taylor, 529 U.S. at 412, 120 S. Ct. at 1523.[13/]  "That federal law, as defined by the

---

[11/]     See also, e.g., Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005), cert. denied, 126 S. Ct. 1622 (2006); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004); Dallio v. Spitzer, 343 F.3d 553, 559-60 (2d Cir. 2003), cert. denied, 541 U.S. 961, 124 S. Ct. 1713 (2004); Eze v. Senkowski, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'") (quoting Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001), cert. denied, 535 U.S. 1019, 122 S. Ct. 1611 (2002)).

[12/]     Accord, e.g., Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003), cert. denied, 540 U.S. 1091, 124 S. Ct. 962 (2003); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000); Lurie v. Wittner, 228 F.3d 113, 125 (2d Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1404 (2001); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000), cert. denied, 531 U.S. 1116, 121 S. Ct. 865 (2001).

[13/]     Accord, e.g., Yarborough v. Alvarado, 541 U.S. 652, 659, 124 S. Ct. 2140, 2147 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); Wiggins v. Smith, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); Lockyer v. Andrade, 538 U.S. 63, 72, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court (continued...)

Supreme Court, may either be a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d at 42. "A petitioner cannot win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 110; <u>accord</u>, <u>e.g.</u>, <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200.

> As to the "contrary to" clause:
>
> A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . .  A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

<u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[14]/

---

[13]/ (...continued)
decision.'"); <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d 587, 591 (2d Cir. 2003), <u>cert. denied</u>, 541 U.S. 1047, 124 S. Ct. 2171 (2004); <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d at 181; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d 1197, 1200 (2d Cir. 2002); <u>Yung</u> v. <u>Walker</u>, 341 F.3d 104, 109-110 (2d Cir. 2003); <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d 36, 42 (2d Cir.), <u>cert. denied</u>, 537 U.S. 909, 123 S. Ct. 251 (2002); <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d 178, 184 (2d Cir. 2001); <u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d 303, 309 (2d Cir. 2001).

[14]/ <u>Accord</u>, <u>e.g.</u>, <u>Brown</u> v. <u>Payton</u>, 544 U.S. 133, 125 S. Ct. 1432, 1438-39 (2005); <u>Bell</u> v. <u>Cone</u>, 543 U.S. 447, 452-53, 125 S. Ct. 847, 851 (2005); <u>Price</u> v. <u>Vincent</u>, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); <u>Lockyer</u> v. <u>Andrade</u>, 123 S. Ct. at 1173-74; <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d 238, 242 (2d Cir. 2006); <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d 210, 219 (2d Cir.), <u>cert. denied</u>, 126 S. Ct. 215 (2005); <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d at 591; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200; <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 109; <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d at 42; <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d at 184; <u>Lurie</u> v. <u>Wittner</u>, 228 F.3d at 127-28.

In <u>Williams</u>, the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 413, 120 S. Ct. at 1523.[15/] However, "[t]he term 'unreasonable' is . . . difficult to define." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 410, 120 S. Ct. at 1522. The Supreme Court made clear that "an <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law." <u>Id</u>.[16/] Rather, the issue is "whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 409, 120 S. Ct. at 1521.[17/] "Objectively unreasonable" is different from "clear error."

---

[15/]    Accord, <u>e.g.</u>, <u>Brown</u> v. <u>Payton</u>, 544 U.S. at 141, 125 S. Ct. at 1439; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520, 123 S. Ct. at 2534-35; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d 238, 246 (2d Cir. 2006); <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d at 181.

[16/]    See also, <u>e.g.</u>, <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent</u>, 538 U.S. at 641, 123 S. Ct. at 1853 ("As we have explained: '[A] federal habeas court may not issue the writ simply because that court concludes that the state-court decision applied [a Supreme Court case] incorrectly.'") (quoting <u>Woodford</u> v. <u>Visciotti</u>, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360 (2002)); <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1175; <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d 243; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d at 219; <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d at 197; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 124-25; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200 ("With regard to issues of law, therefore, if the state court's decision was not an unreasonable application of, or contrary to, clearly established federal law as defined by Section 2254(d), we may not grant habeas relief even if in our judgment its application was erroneous.").

[17/]    Accord, <u>e.g.</u>, <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520-21, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent</u>, 538 U.S. at 641, 123 S. Ct. at 1853; <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1174-75; <u>Woodford</u> v. <u>Visciotti</u>,
(continued...)

Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper

deference to state courts by conflating error (even clear error) with unreasonableness.").  However,

the Second Circuit has explained "that while '[s]ome increment of incorrectness beyond error is

required . . . the increment need not be great; otherwise, habeas relief would be limited to state court

decisions so far off the mark as to suggest judicial incompetence.'"  Jones v. Stinson, 229 F.3d at 119

(quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).[18]  "[T]he range of reasonable

judgment can depend in part on the nature of the relevant rule."  Yarborough v. Alvarado, 541 U.S.

at 663, 124 S. Ct. at 2149.[19]

---

[17]     (...continued)
         537 U.S. at 25-27, 123 S. Ct. at 360-61; Hawkins v. Costello, 460 F.3d at 243; Lynn v.
         Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122;
         Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303
         F.3d 231, 245 (2d Cir. 2002); Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d
         at 128-29.

[18]     Accord, e.g., Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v.
         Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at
         197, 200-01; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d at 245; Yung v.
         Walker, 341 F.3d at 110; Loliscio v. Goord, 263 F.3d at 184.

[19]     The Supreme Court explained:

                [T]he range of reasonable judgment can depend in part on the nature of the relevant
                rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule
                may be plainly correct or incorrect.  Other rules are more general, and their meaning
                must emerge in application over the course of time.  Applying a general standard to
                a specific case can demand a substantial element of judgment.  As a result, evaluating
                whether a rule application was unreasonable requires considering the rule's
                specificity.  The more general the rule, the more leeway courts have in reaching
                outcomes in case by case determinations.

                                                                          (continued...)

Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." Kennaugh v. Miller, 289 F.3d at 45.[20]

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference."  Yung v. Walker, 341 F.3d at 109; accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853.

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment.  When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

---

[19]  (...continued)
Yarborough v. Alvarado, 541 U.S. at 663, 124 S. Ct. at 2149; accord, e.g., Hawkins v. Costello, 460 F.3d at 243.

[20]  Accord, e.g., Tueros v. Greiner, 343 F.3d at 591; Yung v. Walker, 341 F.3d at 109; see Yarborough v. Alvarado, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision.  There is force to this argument.  Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.  At the same time, the difference between applying a rule and extending it is not always clear.  Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.") (citations omitted).

Sellan v. Kuhlman, 261 F.3d at 312; accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853 ("Federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (State court not required to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them."); Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 220; Wade v. Herbert, 391 F.3d 135, 140 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'"  "Such a summary determination, even absent citation of federal case law, is a 'determination on the merits' and as such requires the deference specified by § 2254."  Moreover, "[I]f any reasonable ground was available [for the state court's decision], we must assume that the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (Where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" AEDPA deference applies.), cert. denied, 543 U.S. 872, 125 S. Ct. 110 (2004); Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even more concise Appellate Division disposition – the word 'denied' – triggered AEDPA deference.").

            Where the state court decision is not clear as to whether it rests on federal law or state procedural law, the Second Circuit in Jiminez v. Walker, 458 F.3d 130, 145-46 (2d Cir. 2006), instructed that the court must "examine the three clues laid out in Coleman, Quirama and Sellan" – that is, "(1) the face of the state-court opinion, (2) whether the state court was aware of a procedural

bar, and (3) the practice of state courts in similar circumstances." Jiminez v. Walker, 458 F.3d at

145 & n.16.  Using these three factors, the court should

> classify the decision as either:

>> (1)   fairly appearing to rest primarily on federal law or to be interwoven
>>        with federal law or

>> (2)   fairly appearing to rest primarily on state procedural law.

> Absent a clear and express statement of reliance on a state procedural bar, the Harris
> presumption applies to decisions in the first category and deems them to rest on the
> merits of the federal claim.  Such decisions are not procedurally barred and must be
> afforded AEDPA deference as adjudications "on the merits" under 28 U.S.C.
> § 2254(d).  The Harris presumption does not apply to decisions in the second
> category, which show themselves to rest on an independent state procedural bar.  Nor
> does it apply to decisions in the first category which contain a clear statement of
> reliance on a state procedural bar.  No AEDPA deference is due to these decisions,
> but the state may successfully assert that habeas relief is foreclosed provided that the
> independent state procedural bar is adequate to support the judgment and that neither
> cause and prejudice nor a fundamental miscarriage of justice is shown.

> The effect of these rules is to present federal habeas courts with a binary
> circumstance: we either apply AEDPA deference to review a state court's disposition
> of a federal claim or refuse to review the claim because of a procedural bar properly
> raised.  The middle ground . . . does not exist.

Jiminez v. Walker, 458 F.3d at 145-46 (citations & fns. omitted); accord, e.g., Hawkins v. Costello,

460 F.3d at 242 ("In Jiminez v. Walker, we recently made clear that when a state court rejects a

petitioner's claim as either unpreserved or without merit, the conclusive presumption is that the

adjudication rested on the merits.").  Of course, "[i]f there is no [state court] adjudication on the

merits [and no procedural bar], then the pre-AEDPA, de novo standard of review applies." Cotto

v. Herbert, 331 F.3d 217, 230 (2d Cir. 2003); see also Jiminez v. Walker, 458 F.3d at 145 n.17.

Finally, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." Howard v. Walker, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations: "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); accord, e.g., Lynn v. Bliden, 443 F.3d at 246-47; Rosa v. McCray, 396 F.3d at 220. "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'" Parsad v. Greiner, 337 F.3d at 181 (quoting § 2254(e)(1)); accord, e.g., Lynn v. Bliden, 443 F.3d at 246-47.

## II.    UNDER STONE v. POWELL, BROWN'S CLAIM THAT THE POLICE LACKED PROBABLE CAUSE TO ARREST HIM DOES NOT PROVIDE A BASIS FOR HABEAS RELIEF[21/]

Brown asserts that he was arrested without probable cause and the evidence obtained from the car in which he was a passenger should have been suppressed. (Dkt. No. 4: Pet. ¶ 13(2).)

---

[21/]    For additional decisions authored by this Judge discussing the Stone v. Powell standard on habeas review in language substantially similar to the legal analysis in this entire section of this Report & Recommendation, see, e.g., Serrano v. Walsh 04 Civ. 8615, 2005 WL 3340578 at *6-8 (S.D.N.Y. Dec. 9, 2005) (Peck, M.J.); Montalvo v. Annetts 02 Civ. 1056, 2003 WL 22962504 at *14-17 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.); McPherson v. Greiner, 02 Civ. 2726, 2003 WL 22405449 at *14-17 (S.D.N.Y. Oct. 22, 2003) (Peck, M.J.); Briggs v. Phillips, 02 Civ. 9340, 2003 WL 21497514 at *4-6 (S.D.N.Y. June 30, 2003); Skinner v. Duncan, 01 Civ. 6656, 2003 WL 21386032 at *13-16 (S.D.N.Y. June 17, 2003) (Peck, M.J.); Tibbs v. Greiner, 01 Civ. 4319, 2003 WL 1878075 at *11-13 (S.D.N.Y. Apr. 16, 2003) (Peck, M.J.); Roberts v. Batista, 01 Civ. 5264, 2003 WL 1900866 at *5-7 (S.D.N.Y. Apr. 16, 2003) (Peck, M.J.) (citing my prior decisions); Torres v. Irvin, 33 F. Supp. 2d 257, 274-75 (S.D.N.Y. 1998) (Cote, D.J. & Peck, M.J.); Robinson v. Warden of James A. Thomas Ctr., 984 F. Supp. 801, 804-05 (S.D.N.Y. 1997) (Sprizzo, D.J. & Peck, M.J.).

On direct appeal to the First Department, Brown argued that:  (1) "because the mere observation of a package being exchanged for money is as susceptible to innocent interpretation as to criminal conduct, the officers did not have the requisite probable cause to arrest [Brown] or to search his car" (Ex. A:  Brown 1st Dep't Br. at 11); and (2) the police did not have probable cause to arrest Brown based solely on "his having received a brown paper bag in exchange for currency from an individual not known by the undercover officer to be a drug-dealer" because police did not observe "the bag's contents" nor any "'furtive or evasive' behavior" (Ex. B:  Brown 1st Dep't Pro Se Supp. Br. at 8, emphasis omitted).

The First Department rejected Brown's claim on the merits, holding that the record supported the trial judge's finding that the officers had probable cause to arrest Brown:

> Defendant's suppression motion was properly denied.  An officer observed defendant, in a drug-prone neighborhood, converse with the codefendant, and then saw the codefendant leave the area only to return a few minutes later with a package, which he handed to defendant in exchange for a wad of cash.  Based on the officer's experience with the packaging of drugs in the area, he reasonably believed it likely that the package contained narcotics and therefore had probable cause to arrest defendant.  The arrest of defendant by a fellow officer, based upon communication received from the observing officer, was therefore lawful.

People v. Brown, 304 A.D.2d 321, 321, 758 N.Y.S.2d 24, 25 (1st Dep't) (citations omitted), appeal denied, 100 N.Y.2d 536, 763 N.Y.S.2d 1 (2003).

Brown's Fourth Amendment claim must be assessed by reference to the Supreme Court's decision in Stone v. Powell, 428 U.S. 465, 96 S. Ct. 3037 (1976), which precludes habeas review of Fourth Amendment claims that have been litigated in state court:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.  In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force.

Stone v. Powell, 428 U.S. 465, 494-95, 96 S. Ct. 3037, 3052-53  (1976) (fns. omitted).[22/]

The Second Circuit, sitting en banc, has concluded that Stone v. Powell permits federal habeas review of exclusionary rule contentions only in limited circumstances:

> If the state provides no corrective procedures at all to redress Fourth Amendment violations, federal habeas corpus remains available.  It may further be that even where the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process, the federal intrusion may still be warranted.

Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977) (citations omitted), cert. denied, 434 U.S. 1038, 98 S. Ct. 775 (1978).[23/]

---

[22/]    Accord, e.g., Withrow v. Williams, 507 U.S. 680, 682-86, 113 S. Ct. 1745, 1748-50 (1993); McCleskey v. Zant, 499 U.S. 467, 479, 111 S. Ct. 1454, 1462 (1991); Singh v. Miller, 104 Fed. Appx. 770, 772 (2d Cir.), cert. denied, 543 U.S. 1026, 125 S. Ct. 668 (2004); Gandarilla v. Artuz, 322 F.3d 182, 185 (2d Cir. 2003); Graham v. Costello, 299 F.3d 129, 133-34 (2d Cir. 2002); Fowler v. Kelly, No. 95-2527, 104 F.3d 350 (table), 1996 WL 521454 at *3 (2d Cir. Sept. 16, 1996); Capellan v. Riley, 975 F.2d 67, 69-71 (2d Cir. 1992); Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991); Plunkett v. Johnson, 828 F.2d 954, 956 (2d Cir. 1987).

[23/]    Accord, e.g., Singh v. Miller, 104 Fed. Appx. at 772; Gandarilla v. Artuz, 322 F.3d at 185; Graham v. Costello, 299 F.3d at 133-34; Branch v. McClellan, No. 96-2954, 234 F.3d 1261 (table), 2000 WL 1720934 at *3 (2d Cir. Nov. 17, 2000); Capellan v. Riley, 975 F.2d at 70; Aziz v. Warden of Clinton Correctional Facility, 92 Civ. 104, 1992 WL 249888 at *3 (S.D.N.Y. Sept. 23, 1992), aff'd, 993 F.2d 1533 (2d Cir.), cert. denied, 510 U.S. 888, 114 S. Ct. 241 (1993); Allah v. LeFevre, 623 F. Supp. 987, 990-92 (S.D.N.Y. 1985); see also, e.g.,  Smith v. Senkowski, No. 97 CV 1280, 1999 WL 138903 at *6 (E.D.N.Y. Mar. 10, (continued...)

Here, Brown litigated his Fourth Amendment claim at the pretrial suppression hearing and on direct appeal to the First Department.  (<u>See</u> pages 2-6 & 9-10 above.)   Thus, the state corrective process was not only available, but was employed for Brown's Fourth Amendment claim, which therefore cannot support a habeas corpus petition.  <u>See</u>, <u>e.g.</u>, <u>Singh</u> v. <u>Miller</u>, 104 Fed. Appx. at 772 (Petitioner had "ample opportunity to vindicate his Fourth Amendment rights in the state courts" when, <u>inter alia</u>, he "raised his Fourth Amendment argument on appeal" to the Second Department.); <u>Gandarilla</u> v. <u>Artuz</u>, 322 F.3d at 185 ("[T]he merits of a Fourth Amendment challenge are not reviewable in a federal habeas proceeding if a defendant has had a fair opportunity to litigate that question in State court . . ."); <u>Graham</u> v. <u>Costello</u>, 299 F.3d at 134 ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the [state] court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief."); <u>Blagrove</u> v. <u>Mantello</u>, No. 95-2821, 104 F.3d 350 (table), 1996 WL 537921 at *2 (2d Cir. Sept. 24, 1996) (where defendant's "Fourth Amendment issues were raised before the trial court in the suppression hearing and before the Appellate Division in [his] pro se brief" defendant's "Fourth

---

<u>23/</u>      (...continued)
1999) (Petitioner claimed he was arrested without probable cause and that his pretrial statements therefore should have been suppressed.  "A federal court is not permitted to judge the merits of the state court's decision. The Court need only find that the State's procedure for resolving Fourth Amendment claims is 'facially adequate' and that no unconscionable breakdown' of the process occurred in the petitioner's case.  An unconscionable breakdown occurs when the state court fails to conduct a reasoned inquiry into the petitioner's claim.") (citing <u>Capellan</u> v. <u>Riley</u>, 975 F.2d at 71).

Amendment argument is barred [from federal habeas review] because the issue was fully and fairly litigated in the state courts."); Capellan v. Riley, 975 F.2d at 70 & n.1 (noting that "the 'federal courts have approved New York's procedure for litigating Fourth Amendment claims . . .'"); McPhail v. Warden, Attica Corr. Facility, 707 F.2d 67, 69 (2d Cir. 1983) (New York's procedure for litigating a Fourth Amendment claim in a criminal trial complied with requirement that state provide an opportunity to litigate such claims).[24]

        Brown's claim that the police lacked probable cause to arrest him, and thus that the drugs recovered from the car should have been suppressed, are Fourth Amendment claims that are

---

[24] See also, e.g., Singh v. Miller, 104 Fed. Appx. at 772 ("We have held that the focus of the inquiry as to whether there has been an 'unconscionable breakdown' in the state corrective process is on 'the existence and application of the corrective procedures themselves' rather than on the 'outcome resulting from the application of adequate state court corrective procedures.' [Petitioner] does not and cannot contend that New York does not provide corrective procedures for violations of Fourth Amendment rights.") (citation omitted); Montero v. Sabourin, 02 Civ. 8666, 2003 WL 21012072 at *5 (S.D.N.Y. May 5, 2003) ("[H]abeas review of Fourth Amendment claims that were, or could have been, previously litigated in state court are barred by Stone v. Powell. . . . It has long been acknowledged that New York provides adequate procedures under C.P.L. § 710 et seq., for litigating Fourth Amendment claims."); Ferron v. Goord, 255 F. Supp. 2d 127, 130-31 (W.D.N.Y. 2003) ("The Second Circuit has noted that Stone requires only that the 'the state have provided the opportunity to the state prisoner for full and fair litigation of the Fourth Amendment claim.") (quoting Gates v. Henderson, 568 F.2d at 839); Baker v. Bennett, 235 F. Supp. 2d 298, 307 (S.D.N.Y. 2002) ("The state court need only grant a petitioner 'an opportunity for full and fair litigation of a fourth amendment claim.'") (quoting Capellan v. Riley, 975 F.2d at 70); Fayton v. Goord, 01 Civ. 2912, 2001 WL 694573 at *1 (S.D.N.Y. June 18, 2001) ("Since this petition is based on a fully and fairly litigated Fourth Amendment claim . . . such relief cannot be granted."); Gumbs v. Kelly, 97 Civ. 8755, 2000 WL 1172350 at *10 (S.D.N.Y. Aug. 18, 2000) (New York's procedure for litigating Fourth Amendment claims provides full and fair opportunity to litigate claim); Hunter v. Greiner, 99 Civ. 4191, 2000 WL 245864 at *6 (S.D.N.Y. Mar. 3, 2000).

not cognizable on habeas review. <u>E.g.</u>, <u>Grey</u> v. <u>Hoke</u>, 933 F.2d 117, 121 (2d Cir. 1991)("[F]ederal habeas corpus relief is not available on the ground that evidence produced at trial was the result of an unconstitutional search and seizure, unless the state denied the prisoner an opportunity for full and fair litigation of the claim."); <u>Jackson</u> v. <u>Scully</u>, 781 F.2d 291, 297 (2d Cir. 1986) (Even where state conceded that petitioner's arrest lacked probable cause, petitioner's claim that his post-arrest questioning was fruit of the illegal arrest was barred because New York "clearly provided" petitioner with "an opportunity fully and fairly to litigate" the Fourth Amendment claim.); <u>Chavis</u> v. <u>Henderson</u>, 638 F.2d 534, 538 (2d Cir. 1980) (Petitioner's claim "that his arrest was without probable cause and that therefore the identification evidence should have been excluded, was properly rejected by the district court.  [Petitioner] made no showing . . . that he had been precluded from a full and fair opportunity to litigate this issue in the state courts.  Under <u>Stone</u> v. <u>Powell</u> . . . , he may not urge the same grounds for federal habeas corpus relief."), <u>cert. denied</u>, 454 U.S. 842, 102 S. Ct. 152 (1981); <u>Roberson</u> v. <u>McGinnis</u>, 99 Civ. 9751, 2000 WL 378029 at *5 (S.D.N.Y. Apr. 11, 2000) (Under <u>Stone</u> v. <u>Powell</u>, the Court was precluded from reviewing petitioner's claim that his conviction was based on his confession and the identification testimony obtained as a result of his unlawful arrest.  Petitioner had the opportunity to fully and fairly litigate this Fourth Amendment claim during his pretrial suppressing hearing and First Department appeal.); <u>see</u>, <u>e.g.</u>, <u>Pina</u> v. <u>Kuhlmann</u>, 239 F. Supp. 2d 285, 289 (E.D.N.Y. 2003) (Habeas review unavailable for petitioner's claim that since the police lacked probable cause to arrest him, his post-arrest statements should have been suppressed.  "It is well settled that such claims are not cognizable for habeas corpus review

where the State has provided a full and fair opportunity to litigate this issue."); Manning v. Strack, No. CV 99-3874, 2002 WL 31780175 at *4 (E.D.N.Y. Oct. 11, 2002) (Raggi, D.J.) ("Stone v. Powell prohibits habeas review of [petitioner's] Fourth Amendment claim" that "he was arrested without probable cause" and that his "identifications and . . . statements should have been suppressed as the fruits of this unlawful arrest."  Petitioner "was afforded a full evidentiary hearing on his arrest challenge, as well as one appeal of right and one opportunity to move for leave to appeal."); Senor v. Greiner, No. 00-CV-5673, 2002 WL 31102612 at *10-11 (E.D.N.Y. Sept. 18, 2002) (Habeas claim barred where petitioner argued that he was arrested without probable cause and line-up identifications therefore should have been suppressed.  Petitioner "cannot claim that the state lacked sufficient procedures for redress of his Fourth Amendment claims because the courts in this circuit have expressly approved New York's procedure for litigating such claims . . ." nor has petitioner "alleged that an unconscionable breakdown in the process occurred."); Bilbrew v. Garvin, No. 97-CV-1422, 2001 WL 91620 at *4-5 (E.D.N.Y. Jan. 10, 2001) (Where petitioner "was not denied the opportunity to litigate his Fourth Amendment claims in the state courts, [the habeas court] will not consider" petitioner's claims "that his statements to the police and the station house identifications of him should have been suppressed as 'fruits' of an unlawful arrest . . . . made without probable cause."); Ortiz v. Artuz, 113 F. Supp. 2d 327, 335-36 (E.D.N.Y. 2000) ("Petitioner argue[d] that he was arrested without probable cause in violation of the Fourth Amendment and that his pretrial statement and the identification procedure should have been suppressed as the fruit of the illegal arrest."  Because "[t]he hearing court conducted a reasoned inquiry into petitioner's claim and

determined that there was probable cause for his arrest, and the Appellate Division affirmed on the merits. . . . petitioner's Fourth Amendment claim is unreviewable by this Court."), aff'd, 36 Fed. Appx. 1 (2d Cir.), cert. denied, 536 U.S. 909, 122 S. Ct. 2367 (2002).[25/]

---

[25/]   See also, e.g., Dawson v. Donnelly, 111 F. Supp. 2d 239, 247 (W.D.N.Y. 2000) (Where petitioner's habeas claim that "he was under arrest when he confessed and that there was no probable cause for his arrest" was also raised in a pretrial suppression motion and in his direct state appeal, the state courts gave petitioner "a full and fair opportunity to litigate the claim. Therefore, this Court is precluded from addressing it in the context of a Federal habeas proceeding, and the claim must be dismissed."); Senor v. Senkowski, No. 97-CV-4929, 1999 WL 689477 at *8 (E.D.N.Y. Aug. 31, 1999) (Habeas court cannot consider petitioner's claim that his "arrest violated the Fourth Amendment, and that the line-up identifications were fruit of that unlawful arrest."); Joyner v. Leonardo, 99 Civ. 1275, 1999 WL 608774 at *3-4 (S.D.N.Y. Aug. 12, 1999) (Petitioner's claim that the police lacked probable cause to arrest him and that his subsequent identifications should be suppressed was "rejected under the doctrine established by the Supreme Court in Stone v. Powell . . . "); France v. Artuz, No. 98-CV-3850, 1999 WL 1251817 at *6 (E.D.N.Y. Dec. 17, 1999) (Where petitioner's habeas claim that his statements should be suppressed because he was arrested without probable cause was addressed during a pretrial suppression hearing, his claim was denied "[b]ecause petitioner was given a full and fair opportunity in the state courts to litigate this Fourth Amendment issue . . ."); Quinones v. Keane, 97 Civ. 3173, 1998 WL 851583 at *4-5 (S.D.N.Y. Dec. 7, 1998) (Habeas court barred from considering petitioner's claim that his statements should be suppressed because he "was detained without probable cause when he gave the statements."); Maldonado v. Giambrum, 98 Civ. 0058, 1998 WL 841488 at *2 (S.D.N.Y. Dec. 3, 1998) (Petitioner "claim[ed] that the police did not have probable cause to place him under arrest and, for that reason, the evidence acquired after the arrest should not have been admitted at his trial." Because petitioner was "afforded an adequate opportunity to address this fourth amendment claim in the state court proceedings . . . . [the habeas court] need not consider [petitioner's] claim."); Sansalone v. Kuhlmann, 96 Civ. 9231, 1998 WL 804693 at *1 (S.D.N.Y. Nov. 16, 1998) (Parker, D.J.) (Petitioner's "claim, alleging that a lack of probable cause for his arrest warranted suppression of . . . identification testimony . . . [is] precluded from review here because the issues were fully and fairly litigated both in pre-trial hearings and on direct review."); Moreno v. Kelly, 95 Civ. 1546, 1997 WL 109526 at *8 (S.D.N.Y. Mar. 11, 1997) (Where petitioner alleged that his arrest was not based on probable cause and "that all post-arrest identifications should therefore be suppressed as the fruits of an unconstitutional arrest,"

(continued...)

Accordingly, because Brown had a full and fair opportunity to litigate his Fourth Amendment claim in state court, his claim that the police lacked probable cause to arrest him and that the drugs found in the car should have been suppressed, should be denied as not cognizable on habeas review.

## III.   BROWN'S INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIMS SHOULD BE DENIED

### A.   The Strickland v. Washington Standard on Ineffective Assistance of Trial Counsel [26/]

---

[25/]   (...continued)
petitioner's claim was "not a basis for federal habeas relief."  Because the trial court held a combined identification, suppression, and probable cause hearing, which was reviewed on direct appeal, petitioner "received a 'full and fair' opportunity to litigate his Fourth Amendment claim in the state courts and this [habeas] court has no authority to revisit the issue."  Petitioner's  "contention that the trial court's pre-trial determination was incorrect does not entitle him to federal habeas review."); Burton v. Senkowski, No. CV-94-3836, 1995 WL 669908 at *4 (E.D.N.Y. Nov. 5, 1995) ("[Stone v.] Powell and its progeny" barred review of petitioner's claims that his arrest lacked probable cause and that his line-up identification should have been suppressed as fruit of this unlawful arrest.).

[26/]   For additional decisions authored by this Judge discussing the Strickland v. Washington standard for ineffective assistance of counsel in language substantially similar to this section of this Report and Recommendation, see, e.g., Simms v. Moscicki, 06 Civ. 2056, 2006 WL 2466811 at *11-13 (S.D.N.Y. Aug. 25, 2006) (Peck, M.J.); McLean v. Conway, 06 Civ. 0807, 2006 WL 2405067 at *22-23 (S.D.N.Y. Aug. 21, 2006) (Peck, M.J.); Llanos v. Goord, 06 Civ. 0261, 2006 WL 1981749 at *14-15 (S.D.N.Y. July 14, 2006) (Peck, M.J.); Ahmed v. United States, 05 Civ. 7656, 2006 WL 328339 at *7-9 (S.D.N.Y Feb. 14, 2006) (Peck, M.J.); Pena v. United States, 2005 WL 1176073 at *4-5 (S.D.N.Y. May 18, 2005) (Peck, M.J.); Yapor v. Mazzuca, 04 Civ. 7966, 2005 WL 894918 at *23-25 (S.D.N.Y. Apr. 19, 2005) (Peck, M.J.) (citing my prior decisions), report & rec. adopted, 2005 WL 1845089 (S.D.N.Y. Aug. 3, 2005); Curry v. Burge, 03 Civ. 0901, 2004 WL 2601681 at *26-27 (S.D.N.Y. Nov. 17, 2004) (Peck, M.J.) (citing my prior decisions); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *22-24 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing my
(continued...)

In <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme Court announced a two-part test to determine if counsel's assistance was ineffective: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> at 687, 104 S. Ct. at 2064; <u>accord, e.g.</u>, <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535 (2003); <u>Henry</u> v. <u>Poole</u>, 409 F.3d 48, 62-63 (2d Cir. 2005), <u>cert. denied</u>, 126 S. Ct. 1622 (2006). This performance is to be judged by an objective standard of reasonableness. <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 688, 104 S. Ct. at 2064.[27]

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time . . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the

---

[26] (...continued)
prior decisions); <u>Besser</u> v. <u>Walsh</u>, 02 Civ. 6775, 2003 WL 22093477 at *32-34 (S.D.N.Y. Sept. 10, 2003) (Peck, M.J.), <u>report & rec. adopted</u>, 2003 WL 22681429 (S.D.N.Y. Nov. 13, 2003) & 2003 WL 22846044 (S.D.N.Y. Dec. 2, 2003); <u>Quinones</u> v. <u>Miller</u>, 01 Civ. 10752, 2003 WL 21276429 at *18-19 (S.D.N.Y. June 3, 2003) (Peck, M.J.) (citing my prior decisions), <u>report & rec. adopted</u>, 2005 WL 730171 (S.D.N.Y. Mar. 31, 2005); <u>Larrea</u> v. <u>Bennett</u>, 01 Civ. 5813, 2002 WL 1173564 at *16-19 (S.D.N.Y. May 31, 2000) (Peck, M.J.), <u>report & rec. adopted</u>, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), <u>aff'd</u>, 368 F.3d 179 (2d Cir. 2004); <u>Fluellen</u> v. <u>Walker</u>, 97 Civ. 3189, 2000 WL 684275 at *11 (S.D.N.Y. May 25, 2000) (Peck, M.J.), <u>aff'd</u>, 41 Fed. Appx. 497 (2d Cir. 2002), <u>cert. denied</u>, 538 U.S. 978, 123 S. Ct. 1787 (2003).

[27] Accord, e.g., <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 521, 123 S. Ct. at 2535; <u>Bell</u> v. <u>Cone</u>, 535 U.S. 685, 695, 122 S. Ct. 1843, 1850 (2002); <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 63.

defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Strickland v. Washington, 466 U.S. at 689, 104 S. Ct. at 2065 (citation omitted).[28/]

Second, the defendant must show prejudice from counsel's performance. Strickland v. Washington, 466 U.S. at 687, 104 S. Ct. at 2064. The "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." Id. at 695, 104 S. Ct. at 2068-69. Put another way, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068.[29/]

---

[28/]   Accord, e.g., Bell v. Cone, 535 U.S. at 698, 122 S. Ct. at 1852; Henry v. Poole, 409 F.3d at 63; Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).

[29/]   See also, e.g., Wiggins v. Smith, 539 U.S. at 534, 123 S. Ct. at 2542; Bell v. Cone, 535 U.S. at 695, 122 S. Ct. at 1850; Henry v. Poole, 409 F.3d at 63-64; Aparicio v. Artuz, 269 F.3d at 95; Sellan v. Kuhlman, 261 F.3d at 315; DeLuca v. Lord, 77 F.3d 578, 584 (2d Cir.), cert. denied, 519 U.S. 824, 117 S. Ct. 83 (1996).

"[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. at 2068; accord, e.g., Wiggins v. Smith, 539 U.S. at 534, 123 S. Ct. at 2542. The phrase "reasonable probability," despite its language, should not be confused with "probable" or "more likely than not." Strickler v. Greene, 527 U.S. 263, 289-91, 119 S. Ct. 1936, 1952-53 (1999); Kyles v. Whitley, 514 U.S. 419, 434, 115 S. Ct. 1555, 1565-66 (1995); Nix v. Whiteside, 475 U.S. 157, 175, 106 S. Ct. 988, 998 (1986) ("a defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice under Strickland"); Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. at 2068 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have
(continued...)

The Supreme Court has counseled that these principles "do not establish mechanical rules." <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 696, 104 S. Ct. at 2069. The focus of the inquiry should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process. <u>Id</u>.

Any counsel errors must be considered in the "aggregate" rather than in isolation, as the Supreme Court has directed courts "to look at the 'totality of the evidence before the judge or jury.'" <u>Lindstadt</u> v. <u>Keane</u>, 239 F.3d 191, 199 (2d Cir. 2001) (quoting <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 695-96, 104 S. Ct. at 2069); <u>accord</u>, <u>e.g.</u>, <u>Rodriguez</u> v. <u>Hoke</u>, 928 F.2d 534, 538 (2d Cir. 1991).

The Supreme Court also made clear that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 697, 104 S. Ct. at 2069.[30]

In addition, the Supreme Court has counseled that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the

---

[29] (...continued)
determined the outcome."). Rather, the phrase "reasonable probability" seems to describe a fairly low standard of probability, albeit somewhat more likely than a "reasonable possibility." <u>Strickler</u> v. <u>Greene</u>, 527 U.S. at 291, 119 S. Ct. at 1953; <u>cf</u>. <u>id</u>. at 297-301, 119 S. Ct. at 1955-58 (Souter, J., concurring & dissenting) (arguing that any difference between "reasonable probability" and "reasonable possibility" is "slight").

[30] <u>Accord</u>, <u>e.g.</u>, <u>Smith</u> v. <u>Robbins</u>, 528 U.S. 259, 286 n.14, 120 S. Ct. 746, 764 n.14 (2000).

extent that reasonable professional judgments support the limitations on investigation. . . .  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  Strickland v. Washington, 466 U.S. at 690-91, 104 S. Ct. at 2066.[31/]

      As the Second Circuit noted:  "The Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard."  Lindstadt v. Keane, 239 F.3d at 199.

    **1.**    **Strickland and the AEDPA Review Standard**

      For purposes of this Court's AEDPA analysis, "the Strickland standard . . . is the relevant 'clearly established Federal law, as determined by the Supreme Court of the United States.'"  Aparicio v. Artuz, 269 F.3d 78, 95 & n.8 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(d)(1)).[32/]  "For

---

[31/]    See also, e.g., Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S. Ct. 1, 4 (2003); Engle v. Isaac, 456 U.S. 107, 134, 102 S. Ct. 1558, 1575 (1982) ("We have long recognized . . . that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim."); Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998) ("In reviewing Strickland claims, courts are instructed to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and that counsel's conduct was not the result of error but derived instead from trial strategy. We are also instructed, when reviewing decisions by counsel, not to 'second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every "colorable" claim' on appeal.") (citations omitted); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.) (a reviewing court "may not use hindsight to second-guess [counsel's] strategy choices"), cert. denied, 513 U.S. 820, 115 S. Ct. 81 (1994).

[32/]    See also, e.g., Wiggins v. Smith, 539 U.S. 510, 521-22, 123 S. Ct. 2527, 2535 (2003); Bell v. Cone, 535 U.S. 685, 698, 122 S. Ct. 1843, 1852 (2002); Sellan v. Kuhlman, 261 F.3d at 315.

AEDPA purposes, a petitioner is not required to further demonstrate that his particular theory of ineffective assistance of counsel is also 'clearly established.'" <u>Aparicio</u> v. <u>Artuz</u>, 269 F.3d at 95 n.8. "For [petitioner] to succeed, however, he must do more than show that he would have satisfied <u>Strickland's</u> test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly. . . . Rather, he must show that the [First Department] applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner." <u>Bell</u> v. <u>Cone</u>, 535 U.S. at 698-99, 122 S. Ct. at 1852; <u>see also</u> <u>Yarborough</u> v. <u>Gentry</u>, 540 U.S. 1, 5, 124 S. Ct. 1, 4 (2003).

**B.      Brown's Ineffective Assistance Of Trial Counsel Claims Should Be Denied**

**1.      Trial Counsel Was Not Ineffective For Failing To Submit A Memorandum Of Law After The Suppression Hearing**

Brown asserts that defense "counsel conceded that he was not familiar with the law as it pertained to this case" and "[t]hough the court offered counsel the time to undertake necessary legal research, to investigate and to submit a memorandum on the case law, counsel failed to do so." (Dkt. No. 4:  Pet. ¶ 13(1).)

<u>Strickland</u>'s second prong requires a showing of prejudice, <u>i.e.</u>, that there is a reasonable probability that, but for counsel's error, the result would have been different. (<u>See</u> page 35 above.)  During Brown's suppression hearing, Detective Maier characterized the area as a "drug prone location." (<u>See</u> page 3 above.)  Detective Viruet was an experienced undercover officer who was very familiar with the area, having worked over three years as an undercover officer with the Northern Manhattan Initiative.   Detective Viruet previously performed numerous buys and

observations at the specific location, and on prior occasions, Detective Viruet observed narcotics packaged in brown paper at that location.  When Detective Viruet saw Diaz hand Brown a brown paper package in exchange for money, he believed he had observed a drug transaction.  (See pages 3-5 above.)

Citing People v. Williams[33] and People v. Batista,[34] two cases factually similar to Brown's, Justice Allen concluded that Detective Viruet's observations, in combination with his experience and knowledge that the area was drug-prone, were sufficient to provide probable cause to believe that Diaz had sold narcotics to Brown.  (Ex. S at 6; see also page 6 above.)  Citing People v. Jones,[35] the First Department affirmed that Brown's suppression motion was properly denied.

---

[33]  People v. Williams, 255 A.D.2d 133, 133, 679 N.Y.S.2d 614, 615 (1st Dep't 1998) (Defendant's suppression motion was properly denied and the officer had probable cause to arrest defendant where "the officer observed defendant having a conversation with an unidentified woman in an area the officer characterized as a drug-prone location, then observed the woman start to hand defendant money in exchange for several small bags, which the officer, based on his extensive law enforcement experience, believed to be the type used to package crack cocaine."), appeal denied, 93 N.Y.2d 981, 695 N.Y.S.2d 67 (1999).

[34]  People v. Batista, 261 A.D.2d 218, 223, 690 N.Y.S.2d 536, 540 (1st Dep't) (An experienced narcotics officer witnessed what appeared to be a brown lunch bag wrapped with tape fall from defendant's jacket.  In his experience involving hundreds of narcotics cases, he had seen narcotics packaged in such bags with the same tape wrapping.  "Based on his experience, it was 'immediately apparent' to [the officer] that the package contained narcotics."  The court held that  "since 'the distinctive character of the [package] itself spoke volumes as to its contents – particularly to the trained eye of the officer,' . . . [the officer] had probable cause to associate the property with criminal activity and its warrantless seizure was proper."), appeal denied, 94 N.Y.2d 819, 702 N.Y.S.2d 589 (1999).

[35]  People v. Jones, 90 N.Y.2d 835, 836, 660 N.Y.S.2d 549, 549 (1997) (affirming finding of probable cause where an experienced and trained police detective "observed defendant in a conversation with an unidentified woman in an area he characterized as a drug-prone
(continued...)

Jones, Williams and Batista clearly support the finding of probable cause on the record before Justice Allen (and before this Court).  (See page 10 above.)  Even if defense counsel had submitted a memorandum of law citing cases on the suppression issue to Justice Allen, such an effort would not have been successful based on New York case law.[36]  Thus, Brown cannot show prejudice.

_____

[35]      (...continued)
location" and saw the "woman hand[] defendant money in exchange for an object that [the detective] was unable to see. . . . Given the particular way the woman handled the item, [the detective] believed a drug transaction had just taken place."  The Court of Appeals concluded that although there was no "'telltale sign,'" since "the transaction involved the exchange of currency, took place in a drug-prone location and was observed by an experienced officer who was trained in the investigation and detection of narcotics, . . . there was evidence in the record to support the finding of probable cause.").

[36]      New counsel, against whom Brown has not made any ineffective assistance of counsel claims, represented Brown on direct appeal to the First Department.  In her brief, appellate counsel cited case law to support Brown's lack of probable cause arguments, which Brown also cited in his First Department pro se supplemental brief and repeated in his pro se habeas brief. (Ex. A:  Brown 1st Dep't Br. at 15-18; Ex. B:  Brown 1st Dep't Pro Se Supp. Br. at 8-16; Pet. ¶ 13(2).)  The Court has reviewed the cited cases and, consistent with the First Department's holding, also finds Brown's arguments for lack of probable cause unavailing.  Each case is easily distinguishable on the facts.  See, e.g., People v. Holmes, 81 N.Y.2d 1056, 1058, 601 N.Y.S.2d 459, 461 (1993) (holding that police observation of an "unidentified bulge" in defendant's jacket pocket, in a "known narcotics location," taken together with defendant's flight, justified an information request but not police pursuit); People v. Howard, 50 N.Y.2d 583, 586, 430 N.Y.S.2d 578, 581 (police officer "may not pursue, absent probable cause to believe that the individual has committed, is committing, or is about to commit a crime, . . . even though he ran away"), cert. denied, 449 U.S. 1023, 101 S. Ct. 590 (1980); People v. De Bour, 40 N.Y.2d 210, 221, 386 N.Y.S.2d 375, 383-84 (1976) (police inquiry was reasonable where, after midnight in a drug-prone area, defendant conspicuously crossed the street to avoid walking past uniformed officers; asking defendant to open his jacket after noticing a bulge at the waistband which the officer "'took [] to be a gun'" was a reasonably limited subsequent intrusion); People v. Taveras, 155 A.D.2d 131, 137-38, 553 N.Y.S.2d 305, 308-09 (1st Dep't 1990) ("undefined bulge inside the crotch area" could have been a number of innocuous objects and was not sufficient to warrant a frisk), appeal dismissed, 76 N.Y.2d 871, 560 N.Y.S.2d 984 (1990).

(continued...)

In addition, even if this Court on a direct appeal would find the conduct to constitute ineffective assistance (and this Court would not so find), that is not sufficient. The First Department found that, "[s]ince there is no reason to believe that the suppression motion possessed any likelihood of success, counsel's failure to perform additional research or to submit a memorandum of law did not render the representation afforded defendant on the motion ineffective." People v. Brown, 304 A.D.2d 321, 321-22, 758 N.Y.S.2d 24, 25 (1st Dep't), appeal denied, 100 N.Y.2d 536, 763 N.Y.S.2d 1 (2003). Brown "must show that the [First Department] applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 698-99, 122 S. Ct. 1843, 1852 (2002); see pages 20-21 above. Brown has not done so.

Brown's trial counsel was not ineffective for failing to research and submit a memorandum of law on the probable cause issue.

---

36/   (...continued)

The Court also finds Brown's interpretation of Jones, that evidence of evasive behavior is required to find probable cause (see Brown 1st Dep't Br. 17-18), inaccurate. People v. Jones, 90 N.Y.2d at 837, 660 N.Y.S.2d at 550 ("Those factors relevant to assessing probable cause include the exchange of currency; whether the particular community has a high incidence of drug trafficking; the police officer's experience and training in drug investigations; and any 'additional evidence of furtive or evasive behavior on the part of the participants.'") Probable cause is not determined by the presence or absence of any single factor, but instead by the totality of the circumstances. See, e.g., People v. Jones, 90 N.Y.2d at 837, 660 N.Y.S.2d at 550 ("Although we recognized in McRay that the passing of a 'telltale sign' of narcotics strongly suggests an illicit drug transaction . . . , we did not find a 'telltale sign' to be an indispensable prerequisite to probable cause.") (citing People v. McRay, 51 N.Y.2d 594, 603-04, 435 N.Y.S.2d 679, 684 (1980)); People v. Barnes, 249 A.D.2d 227, 228, 673 N.Y.S.2d 366, 367 (1st Dep't) ("Under the totality of the circumstances, there was probable cause to arrest defendant" where in a "drug prone location, the experienced narcotics officer observed defendant and [another person] . . . exchange[] an object that [defendant] retrieved from a brown paper bag that he was carrying for money."), appeal denied, 92 N.Y.2d 893, 680 N.Y.S.2d 57 (1998).

> **2.     Trial Counsel Was Not Ineffective For Failing To Call A Witness, Co-Arrestee Willie Press, To Testify On Behalf Of Brown**

Brown claims that his counsel was ineffective for failing to call co-arrestee Willie Press to testify at both the suppression hearing and trial because Press "made favorable statements in confirmity [sic] with [Brown's] position and offered to testify on [Brown's] behalf." (Dkt. No. 4: Pet. ¶ 13(3).) Press's affidavit stated that Sanchez was the actual owner of the drugs and that Brown had instead purchased a bottle of cognac in a brown paper bag from Diaz.  (See page 11 above.) Specifically, Brown claimed that had defense counsel called Press to testify, "counsel would have established a different version of the facts, and it may have tipped the balance creating a reasonable probability for the trial judge (at the hearing) and factfinder (the jury) to have a reasonable doubt respecting guilt and severely question the officer's claim of probable cause as well as his credibility." (Pet. add.(3) at 9.)

Regarding the claim of ineffective assistance for failure to call Press to testify at the suppression hearing, Justice Allen held:

> [Press'] proffered testimony has no bearing on the legality of the police conduct leading to the recovery of the cocaine, which was the only relevant issue of the hearing.

(Ex. L:  § 440 Order at 2.)  Regarding the claim of ineffective assistance for failure to call Press to testify at trial, Justice Allen held:

> To succeed on a claim of ineffective assistance of counsel, a defendant must demonstrate the absence of strategic or other legitimate explanations for counsel's conduct. . . . [Brown's] own papers reveal the strategic reason counsel would not call Press as a witness:  counsel did not believe that the jury would find Press's testimony credible.

(Id. at 2, citations omitted.)

The Court agrees that not calling Press to testify was a legitimate strategy decision. Press had an "extensive" criminal record, including felony convictions and drug related offenses. (Ex. K: A.D.A. Miller § 440 Opp. Aff. ¶ 13.)  In addition, Press was involved in the crime, which may have weighed negatively on the believability of his story and on his credibility generally.  It was a reasonable strategic decision not to call Press to testify if trial counsel believed Press would be lying or that his testimony could damage counsel's reasonable doubt trial strategy.[37/]  See, e.g., Pena-Martinez v. Duncan, 112 Fed. Appx. 113, 115 (2d Cir. 2004) (Trial counsel's "decision not to call Laracuente as a witness was based on an interview he had with her in which he learned that . . . she would not provide testimony that would be helpful to him. . . . Based  on the information contained in the [trial counsel's] affidavit, we conclude that trial counsel's decision not to call Laracuente was strategic" and hence not ineffective.); see also, e.g., Powell v. Lehman, No. 05-35532,  2006 WL 1069560 at *2 (9th Cir. Apr. 24, 2006) (counsel was not ineffective for failing to call witness where proposed testimony was highly inconsistent), cert. denied, --- S. Ct. ---, 2006 WL 2679912 (Nov. 6, 2006); Llanos v. Goord, 06 Civ. 0261, 2006 WL 1981749 at *19 (S.D.N.Y. July 14, 2006) (Peck, M.J.) (counsel not ineffective for failing to call witness he felt was not truthful and whose testimony he felt would be harmful); Reed v. Smith, No. 05-CV-3969, 2006 WL 929376 at *7-8 (E.D.N.Y.

---

[37/]     Counsel might well have concluded that the claim that three people drove to Manhattan from New Jersey to buy liquor from a person on a street corner would not be credible, particularly if a police inventory record of the car's contents revealed that the car did not contain a liquor bottle in a brown paper bag.

Apr. 11, 2006) (trial counsel was not ineffective where witnesses' "reliability . . . was certainly questionable enough to ratify his strategy of refraining from calling them.").

The Second Circuit has held that "counsel's decision as to 'whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation.'" United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000) (quoting United States v. Schmidt, 105 F.3d 82, 90 (2d Cir.), cert. denied, 522 U.S. 846, 118 S. Ct. 130 (1997)), cert. denied, 532 U.S. 1007, 121 S.Ct. 1733 (2001).  Courts in this Circuit have made clear that "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.), cert. denied, 484 U.S. 958, 108 S. Ct. 357 (1987);[38] see, e.g., United States v. DeJesus, 57 Fed. Appx. 474, 478 (2d Cir.) ("A trial counsel's 'decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial.' Because of this inherently tactical nature, the decision not to call a particular witness generally should not be disturbed."  Counsel's decision not to call a particular witness was grounded in strategy

---

[38]     Accord, e.g.,  Llanos v. Goord, 2006 WL 1981749 at *19; Kanani v. Phillips, 03 Civ. 2534, 2004 WL 2296128 at *27 (S.D.N.Y. Oct. 13,  2004) (Peck, M.J.), report & rec. adopted, 2005 WL 2431416 (S.D.N.Y. Oct. 3, 2005); Smalls v. McGinnis, 04 Civ. 0301, 2004 WL 1774578 at *19 (S.D.N.Y. Aug. 10, 2004) (Peck, M.J.);  Rodriguez v. Senkowski, 03 Civ. 3314, 2004 WL 503451 at *41 (S.D.N.Y. Mar. 15, 2004) (Peck, M.J.); Gomez v. Duncan, 02 Civ. 0846, 2004 WL 119360 at *31 (S.D.N.Y. Jan. 27, 2004) (Peck, M.J.); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *25 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.); Skinner v. Duncan, 01 Civ. 6656, 2003 WL 21386032 at *37 (S.D.N.Y. June 17, 2003) (Peck, M.J.).

and not deficient, "even though [defendant] requested that she do so and provided her with contact information for potential witnesses.") (citation omitted), cert. denied, 538 U.S. 1047, 123 S. Ct. 2110 (2003).[39]

Trial counsel was not ineffective for failing to call Press as a witness.

### 3.      Trial Counsel Did Not Prevent Brown From Testifying On His Own Behalf

Brown claims that defense counsel failed "to permit [him] to testify on [his] own behalf," which "deprived [him] of the effective assistance of counsel."  (Dkt. No. 4:  Pet. ¶ 13(3).) Specifically, Brown claims that "counsel deprived [him] from testifying, both at the hearing and trial[,] curtailing, without an explanation, [Brown's] requests to testify."  (Pet. add.(3) at 10.)

Justice Allen found credible defense counsel's testimony that he had informed Brown that Brown had the ultimate decision on whether to take the stand.  (See pages 14-15 above.)  In addition, Brown himself admitted that defense counsel explained reasons why Brown should not testify.  (See page 14 above.)  Justice Allen made a factual determination that defense counsel may have made a "forceful attempt" at dissuading Brown from testifying, but that counsel did not deny Brown his right to take the witness stand on his own behalf.  (See page 15 above.)

---

[39]      See also, e.g., United States v. Eyman, 313 F.3d 741, 743 (2d Cir. 2002) ("A failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel."), cert. denied, 538 U.S. 1021, 123 S. Ct. 1949 (2003); United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998), cert. denied, 526 U.S. 1164, 119 S. Ct. 2059 (1999); United States v. Schmidt, 105 F.3d 82, 90 (2d Cir.), cert. denied, 522 U.S. 846, 118 S. Ct. 130 (1997); Nieves v. Kelly, 990 F. Supp. 255, 263-64 (S.D.N.Y. 1997) (Cote, D.J. & Peck, M.J.); Rodriguez v. Mitchell, 92 Civ. 2083, 1993 WL 229013 at *3, 5 (S.D.N.Y. June 24, 1993) ("Counsel's decision not to call a witness, if supported by valid tactical considerations, does not constitute ineffective assistance of counsel.").

This Court has no reason to reject the § 440 court's determination as to defense counsel's credibility.   28 U.S.C. 2254(e)(1) states that:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

While Brown's habeas brief claims defense counsel never informed him of his right to testify on his own behalf (Pet. add.(3) at 10), Brown fails to rebut Justice Allen's factual conclusion to the contrary by clear and convincing evidence.[40/]   Indeed, after reading the § 440 hearing testimony, this Court

---

[40/]   See, e.g., LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002) ("In reviewing habeas petitions, we must presume the state court's findings of fact are correct, unless the petitioner meets the 'burden of rebutting th[is] presumption of correctness by clear and convincing evidence.'") (brackets in original); Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) ("We presume that the state court's factual findings are correct unless they are rebutted by clear and convincing evidence."); Yung v. Walker, 296 F.3d 129, 134  (2d Cir. 2002) ("We must presume the state court's factual findings to be correct and may overturn those findings only if petitioner offers clear and convincing evidence of their incorrectness."); Brown v. Artuz, 283 F.3d  492, 498 (2d Cir. 2002) ("[T]he AEDPA instructs that state court findings of fact 'shall be presumed correct,' rebuttable only upon a showing of 'clear and convincing evidence.'"); Llanos v. Goord, 06 Civ. 0261, 2006 WL 1981749 at *20 & n.35 (S.D.N.Y. July 14, 2006) (Peck, M.J.); Skinner v. Duncan, 01 Civ. 6656, 2003 WL 21386032 at *28-29 & n.46 (S.D.N.Y. June 17, 2003) (Peck, M.J.) (& cases cited therein); Tibbs v. Greiner, 01 Civ. 4319, 2003 WL 1878075 at *8 (S.D.N.Y. Apr. 16, 2003); Bynum v. Duncan, 02 Civ. 2124, 2003 WL 296563 at *6 (S.D.N.Y. Feb. 12, 2003) ("Under AEDPA, this Court must presume the state court's factual findings to be correct and may overturn those findings only if the petitioner offers clear and convincing evidence of their incorrectness."); Fabian v. Herbert, 00 Civ. 5515, 2003 WL 173910 at *5 (S.D.N.Y. Jan. 23, 2003) ("In reviewing state court factual determinations, the Court 'must apply a presumption of correctness . . . unless rebutted by clear and convincing evidence.'") (quoting Rodriguez v. Bennett, 98 Civ. 580, 1998 WL 765180 at *3 (S.D.N.Y. Nov. 2, 1998)); Marsh v. Ricks, 02 Civ. 3449, 2003 WL 145564 at *2 (S.D.N.Y. Jan. 17, 2003) ("State court fact findings underlying habeas claims enjoy a strong presumption of correctness that can only be rebutted by 'clear and convincing (continued...)

comes to the same conclusion as did Justice Allen.

This Court finds (as did Justice Allen) that trial counsel did not prevent Brown from testifying on his own behalf and was not ineffective for (correctly) discouraging Brown from testifying.

### 4.        Trial Counsel's Aggregate Performance Was Not Ineffective

As noted above (see page 36 above), any counsel errors must be considered in the "aggregate" rather than in isolation, as the Supreme Court has directed courts "to look at the 'totality of the evidence before the judge or jury.'"  Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001) (quoting Strickland v. Washington, 466 U.S. 668, 695-96, 104 S. Ct. 2052, 2069 (1984)).  Brown claims that his trial counsel overall was ineffective, but gives no details other than the specific claims the Court already has addressed.  (See Dkt. No. 4: Pet. ¶ 13(1) & (3), add. (1) & (3).)

Strickland, of course, teaches that "[j]udicial scrutiny of counsel's performance must be highly deferential."  Strickland v. Washington, 466 U.S. at 689, 104 S. Ct. at 2065.  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the

---

40/        (...continued)
          evidence.'"); Brown v. Costello, 00 Civ. 4734, 2003 WL 118499 at *8 (S.D.N.Y. Jan. 13, 2003) ("State court factual determinations must be presumed correct unless the petitioner is able to rebut them with clear and convincing evidence."); Grate v. Stinson, 224 F. Supp. 2d 496, 501 (E.D.N.Y. 2002) (Post-AEDPA, "a federal court conducting a collateral review must still presume state court findings of fact to be correct, 28 U.S.C. § 2254(e), although it is probably harder now [than pre-AEDPA] for a habeas petitioner to overcome this presumption, as the petitioner must now present clear and convincing evidence that the finding of fact was erroneous, id.").

circumstances, the challenged action 'might be considered sound trial strategy.'"  Id.

The Sixth Amendment does not guarantee "error-free, perfect representation," Morris v. Garvin, No. 98-CV-4661, 2000 WL 1692845 at *3 (E.D.N.Y. Oct. 10, 2000), but merely a "wide range of professionally competent assistance," Strickland v. Washington, 466 U.S. at 689, 104 S. Ct. at 2065.   Brown must show that trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."   Strickland v. Washington, 466 U.S. at 687, 104 S. Ct. at 2064; see, e.g., Smith v. Robbins, 528 U.S. 259, 284, 120 S. Ct. 746, 763 (2000) ("'We address not what is prudent or appropriate, but only what is constitutionally compelled.'") (quoting United States v. Cronic, 466 U.S. 648, 665, n. 38, 104 S. Ct. 2039, 2050 n. 38 (1984)); Burger v. Kemp, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126 (1987) (same); United States v. DiTommaso, 817 F.2d 201, 216 (2d Cir. 1987) (although, "[t]o put it charitably," trial counsel's performance did not "furnish[ ] a full model for aspiring advocates," it did not fall outside the "wide range of reasonable professional assistance"); Wise v. Smith, 735 F.2d 735, 739 (2d Cir. 1984) (defendant "was not entitled to a perfect defense, and the cumulative effect of the errors and omissions that we might find do not amount to a denial of effective assistance of counsel").[41/]

---

[41/]     See also, e.g., Castro-Poupart v. United States, No. 91-1877, 976 F.2d 724 (table), 1992 WL 240655 at *2 (1st Cir. Sept. 30, 1992) ("Effective assistance is not necessarily error free assistance.); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) ("petitioner was not entitled to error-free representation, only representation that fell within the range of competence demanded of attorneys in criminal cases"); Smalls v. McGinnis, 04 Civ. 0301, 2004 WL 1774578 at *25 (S.D.N.Y. Aug. 10, 2004) (Peck, M.J.); Quinones v. Miller, 01 Civ. 10752, 2003 WL 21276429 at *63 (S.D.N.Y. June 3, 2003) (Peck, M.J.); Larrea v.
(continued...)

The Court has read the entire suppression hearing and trial transcripts.  Judged in context and without the benefit of hindsight, trial counsel's performance as a whole did not constitute ineffective assistance in violation of Brown's Sixth Amendment rights.  To the contrary, defense counsel made pre-trial motions, vigorously conducted voir dire, vigorously cross examined witnesses at both the suppression hearing and trial, and developed sound trial strategies, thereby providing the requisite level of legal representation.  Moreover, applying the deferential AEDPA standard, this Court cannot say that the § 440 court's and First Department's rejections of Brown's ineffective counsel claims constituted an objectively unreasonable application of Supreme Court precedent. See, e.g., Jones v. Stinson, 229 F.3d 112, 121 (2d Cir. 2000) (although the Second Circuit might have found error had the question been presented on direct review, under deferential AEDPA standard the appellate division's ruling was held not objectively unreasonable); Otero v. Eisenschmidt, 01 Civ. 2562, 2004 WL 2504382 at *37 (S.D.N.Y. Nov. 8, 2004) (Peck, M.J.).

Even assuming arguendo that Brown's complaints about trial counsel had merit (which they do not), he cannot establish prejudice.  Brown's trial counsel faced an up-hill battle to try to overcome the evidence against Brown.  An experienced undercover detective witnessed the hand-to-hand transaction between Brown and Diaz.  Because of his training and experience, specific to narcotics and that geographical area, the detective believed he had witnessed a drug transaction.

---

41/     (...continued)
        Bennett, 01 Civ. 5813, 2002 WL 1173564 at *26 (S.D.N.Y. May 31, 2002) (Peck, M.J.), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2000), aff'd, 368 F.3d 179 (2d Cir. 2004); Solomon v. Comm'r of Corr. Servs., 786 F. Supp. 218, 226 (E.D.N.Y. 1992) ("Although petitioner's counsel undoubtedly made certain errors, this record indicates that viewed in the context of the entire record, he did a reasonable job.").

Within minutes of the crime, Brown was arrested and identified by the undercover detective as the buyer in the transaction.  The suppression court found that the detective had probable cause to arrest Brown, and thus the drugs found in the car were not suppressed.  Had Brown testified, the prosecutor would have been allowed to ask about Brown's prior felony convictions.  Brown's only proposed witness was a co-arrestee and prior felon.  In addition, Brown's proposed explanation of the events, that he did not purchase drugs but instead bought a bottle of cognac, was not credible.  The evidence against Brown was quite strong, and there is no indication that the outcome of any of Brown's proceedings would have been different even if defense counsel had taken alternate or additional steps.

Brown's ineffective assistance of counsel claims should be DENIED.

## CONCLUSION

For the reasons discussed above, Brown's habeas petition should be DENIED and a certificate of appealability should not issue.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard C. Casey, 500 Pearl Street, Room 1350, and to my chambers, 500 Pearl Street, Room 1370.  Any requests for an extension of time for filing objections must be directed to Judge Casey (with a

courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections

for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension

Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86

(1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d

Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Secretary of Health & Human

Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988);

McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72, 6(a), 6(e).


DATED:       New York, New York
             November 27, 2006



                                          Respectfully submitted,



                                          Andrew J. Peck
                                          United States Magistrate Judge


Copies to:    Dashawn Brown
              Alyson J. Gill, Esq.
              Judge Richard C. Casey